IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


DEONTRAY D. COLEMAN,

Plaintiff,

v.                                              CASE NO. 20-3236-SAC

MIKE JOHNSTON,

Defendant.


MEMORANDUM AND ORDER
AND ORDER TO SHOW CAUSE

Plaintiff Deontray D. Coleman, a prisoner at the United States Disciplinary Barracks, Fort Leavenworth, Kansas, brings this *pro se* civil rights action.  For the reasons discussed below, Plaintiff is ordered to show cause why his Complaint should not be dismissed.

I.  Nature of the Matter before the Court

Plaintiff's Complaint (ECF No. 1) alleges violation of his right to freedom of religion.  He states that he began practicing the Rastafarian faith in 2018 and officially changed his religious preference with the U.S. Disciplinary Barracks (USDB) from Christian to Rastafarian in January 2020.  Plaintiff states he is choosing to take the Nazarite vow, which provides no razor shall touch his head and he shall let his hair grown long.  On July 7, 2020, he submitted two MCC Form 510s to the Commandant for exceptions to AR 670-1 "Wear and Appearance of Army Uniform and Insignia," which the USDB requires inmates to follow.  One request was for a beard and the other was for dreadlocks.  Plaintiff's request for an exception for a beard was answered, but his request

for dreadlocks was not answered within the timeframe outlined by regulations. When he pointed out that the regulations provide a 30-day response time, he was told his request was being processed. Plaintiff also requested on July 25, 2020 to be able to speak with a Rastafarian minister in accordance with DoDI 1325.07 and received another "it's being processed" response. As of the date Plaintiff filed his Complaint (September 16, 2020), he had still not received a response to his requests. Plaintiff alleges he has been told he has to cut his hair or face disciplinary charges.

Plaintiff names as defendant Mike Johnston, Commandant of the USDB. Mr. Coleman alleges violation of his rights under the Religious Freedom Restoration Act (RFRA), 42 U.S.C. § 2000bb. He seeks an exception to the grooming policy and $1,000 for court costs, materials, and suffering.

## II.  Statutory Screening of Prisoner Complaints

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of such entity to determine whether summary dismissal is appropriate. 28 U.S.C. § 1915A(a). Upon completion of this screening, the Court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief. 28 U.S.C. §§ 1915A(b).

A court liberally construes a pro se complaint and applies "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). In addition, the court accepts all well-pleaded allegations in the complaint as true. *Anderson v. Blake*, 469 F.3d 910, 913 (10th Cir. 2006). On the other hand, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," dismissal is appropriate. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

A pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (citations omitted). The complaint's "factual allegations must be enough to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

The Tenth Circuit Court of Appeals has explained "that, to state a claim in federal court, a complaint must explain what each defendant did to [the *pro se* plaintiff]; when the defendant did it; how the defendant's action harmed [the plaintiff]; and, what specific legal right the plaintiff believes the defendant violated." *Nasious v. Two Unknown B.I.C.E. Agents*, 492 F.3d 1158, 1163 (10th Cir. 2007). The court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citation omitted).

The Tenth Circuit has pointed out that the Supreme Court's decisions in *Twombly* and *Erickson* gave rise to a new standard of review for § 1915(e)(2)(B)(ii) dismissals. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (citations omitted); *see also Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009). As a result, courts "look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief." *Kay*, 500 F.3d at 1218 (citation omitted). Under this new standard, "a plaintiff must 'nudge his claims across the line from conceivable to plausible.'" *Smith*, 561 F.3d at 1098 (citation omitted). "Plausible" in this context does not mean "likely to be true," but rather refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it

innocent," then the plaintiff has not "nudged [his] claims across the line from conceivable to plausible." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Twombly*, 127 S. Ct. at 1974).

## III. Discussion

### A.   Claim for Damages

Insofar as Plaintiff is attempting to recover damages in his lawsuit, that claim is barred.  In *Feres v. United States*, 340 U.S. 135 (1950), the United States Supreme Court determined that the Federal Tort Claims Act did not operate as a waiver of sovereign immunity in an action brought by active-duty military personnel.  The Court held that the federal government "is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Id.* at 146.

Federal courts have extended the "incident to service" test to bar other damages actions against military personnel.  In *Chappell v. Wallace*, 462 U.S. 296 (1983), the Court applied the *Feres* doctrine to bar constitutional claims brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), holding "that enlisted military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations." *Chappell*, 462 U.S. at 305; see also *United States v. Stanley*, 483 U.S. 669, 681 (1987) ("Today, no more than when we wrote *Chappell*, do we see any reason why our judgment in the *Bivens* context should be any less protective of military concerns than it has been with respect to FTCA suits, where we adopted an 'incident to service' rule.").

Plaintiff's status as a military prisoner dictates that his claims concerning violation of his constitutional right to freedom of religion arise incident to military service.  In *Ricks v. Nickels*, 295 F.3d 1124 (10th Cir. 2002), the Tenth Circuit noted that:

> At the time he filed the original complaint, Ricks was serving his sentence at the USDB in Fort Leavenworth, Kansas.  The USDB is the Army Corrections System maximum custody facility and provides long-term incarceration for enlisted and officer personnel of the armed forces.  No civilians are confined at the USDB.  The USDB is run by the Commandant, a United States Army military police officer.  Military police serve as correctional officers at the USDB, which does not employ civilian guards.

*Id.* at 1126 (rejecting military prisoner's *Bivens* claim under the *Feres* doctrine; plaintiff, although discharged, remained subject to the Uniform Code of Military Justice (UCMJ)).  The Court held that Ricks' alleged injuries stemmed from his military relationship such that it is incident to his military service, where he was convicted in a military court for offenses committed during active duty; was confined in a military institution commanded and operated by military personnel, subject to the USDB's rules and regulations; and was subject to the UCMJ and could be tried by court-martial for offenses during incarceration.  Likewise, any claim Plaintiff may be making for monetary damages is "incident to military service" and therefore barred by the *Feres* doctrine.

Moreover, to the extent Plaintiff seeks damages under RFRA, such claim is also barred by sovereign immunity.  The congressional waiver of sovereign immunity under RFRA is limited to RFRA claims seeking injunctive relief.  *Crocker v. Durkin*, 159 F. Supp. 2d 1258, 1269 (D. Kan. 2001), *aff'd*, 53 F. App'x 503 (10th Cir. 2002).

**B.  Exhaustion of Administrative Remedies**

Under 42 U.S.C. § 1997e(a), a prisoner must exhaust his administrative remedies prior to filing a lawsuit in federal court regarding prison conditions.  *Id.*  Section 1997e(a) expressly provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

*Id.*  This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it."  *Beaudry v. Corrections Corp. of Am.*, 331 F.3d 1164, 1167 n.5 (10th Cir. 2003), *cert. denied*, 540 U.S. 1118 (2004); *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010).[1]  While failure to exhaust is an affirmative defense and a plaintiff is generally not required to plead it in the Complaint, when that failure is clear from materials filed by the plaintiff, the Court may sua sponte inquire into the issue of exhaustion.  *See Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007) (acknowledging district courts may raise exhaustion question sua sponte, consistent with 42 U.S.C. § 1997e(c)(1) and 28 U.S.C. §§ 1915 and 1915A).

As summarized above, Plaintiff stated in his Complaint that he had not yet received an official response to his request for a religious exception.  It appears there was a change in Department of Defense policy regarding accommodation of religious practices at approximately the same time as Plaintiff filed his Complaint.  Therefore, before the Court proceeds with screening this case, Plaintiff is directed to inform the Court whether he subsequently received a response to his exception request and whether he administratively appealed that response, if necessary.

## IV.  Response Required

For the reasons stated herein, it appears that Plaintiff's Complaint may be subject to dismissal under 28 U.S.C. § 1915A(b) for failure to state a claim upon which relief may be granted and for failure to exhaust.  Plaintiff is therefore required to show good cause why his Complaint should not be dismissed.  Plaintiff is warned that his failure to file a timely response may result in the Complaint being dismissed for the reasons stated herein without further notice.

---

[1]    To satisfy this requirement, a prisoner must fully comply with the institution's grievance procedures.  *Jones v. Bock*, 549 U.S. 199, 218 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90 (2006); *Little,* 607 F.3d at 1249 (The "inmate may only exhaust by properly following all the steps laid out in the prison system's grievance procedures.")(citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim. . . ."  *Id.* (citing *Jernigan v. Stuchell,* 304 F.3d 1030, 1032 (10th Cir. 2002)).

## V.  Motion to Appoint Counsel (ECF No. 2)

Also before the Court is Plaintiff's Motion to Appoint Counsel.  The Court has considered Plaintiff's motion.  There is no constitutional right to appointment of counsel in a civil case.  *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995).  The decision whether to appoint counsel in a civil matter lies in the discretion of the district court.  *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991).  "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel."  *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)).  It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case."  *Steffey*, 461 F.3d at 1223 (quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)).

In deciding whether to appoint counsel, courts must evaluate "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims."  *Hill*, 393 F.3d at 1115 (citing *Rucks*, 57 F.3d at 979).  The Court concludes in this case that (1) it is not clear at this juncture that Plaintiff has asserted a colorable claim; (2) the issues are not overly complex; and (3) Plaintiff appears capable of adequately presenting facts and arguments.  Consequently, the Court denies the motion.

**IT IS THEREFORE ORDERED** that Plaintiff is granted to and including **March 18, 2021**, in which to show good cause, in writing, why his Complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Appoint Counsel (ECF No. 2) is **denied**.

IT IS SO ORDERED.

DATED:  This 18th day of February, 2021, at Topeka, Kansas.


s/  Sam A. Crow
SAM A. CROW
U.S. Senior District Judge